```
                                                               O
                                                              JS-6
```

# United States District Court
# Central District of California

| | |
|---|---|
| TOYKA HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>DELTA AIR LINES, INC.; and DOES 1-25, inclusive,<br><br>    Defendants. | Case No. 2:18-cv-02341-ODW (FFM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17]** |

## I.    INTRODUCTION

Plaintiff, Toyka Harris, brings this action against Defendant, Delta Air Lines, Inc., for various claims related to Defendant's termination of Plaintiff's employment. Plaintiff alleges six claims: (1) race discrimination in violation of California Government Code section 12940; (2) disability discrimination in violation of California Government Code section 12940; (3) failure to prevent discrimination in violation of California Government Code section 12940(k); (4) failure to reasonably accommodate disability in violation of California Government Code section 12940(m); (5) retaliation for medical leave in violation of California Government Code section 12945.2; and (6) retaliation in violation of California Government Code section 12940(h).  Pending before the Court is Defendant's Motion for Summary

Judgment, or in the alternative, Partial Summary Judgment ("Motion"). (ECF No. 17.) For the following reasons, the Court **GRANTS** Defendant's Motion.[1]

## II. FACTUAL BACKGROUND

Plaintiff began her career with Defendant in October 1995 in a call center. (Pl.'s Statement of Additional Material Facts ("PSAMF") 1, ECF No. 18-1.) Plaintiff remained in this position until she was furloughed in September 2005. (*Id.* 3.) In May 2007, Plaintiff returned to active employment with Defendant as a customer service agent. (*Id.* 4.)

### A. Plaintiff's Injury History

During Plaintiff's employment, she suffered several on the job injuries. As a result, Plaintiff took four medical leaves of absences. (*Id.* 7.) These injuries included a carpal tunnel injury, tenosynovitis, and a shoulder strain, resulting in medical leave between 2001 to 2003. (*Id.* 9, 13; Mot. 2.) In 2009, Plaintiff experienced anxiety attacks and insomnia, in which her doctor placed her on leave from work. (PSAMF 25; Mot. 2.) Plaintiff's request for medical leave was approved by a third-party administrator, Sedgwick. (PSAMF 26.) Plaintiff took leave from November 9, 2009, to March 7, 2010. (*Id.*) Although Plaintiff returned to work on March 8, 2010, Plaintiff again took medical leave for her anxiety disorder from November 11, 2011, to January 30, 2012, which was also approved by Sedgwick. (*Id.* 30, 31.) Plaintiff eventually returned to work on January 31, 2014, with no restrictions. (*Id.* 33.) On March 19, 2015, Plaintiff purportedly took a one-day medical leave for anxiety, however, Sedgwick denied Plaintiff's medical leave because it was not timely reported. (*Id.* 34, 35.)

### B. Altercations Involving Plaintiff

During Plaintiff's employment with Defendant, she was involved in a number of incidents with co-workers and customers. In 2011, a Caucasian co-worker, Marilyn

---

[1] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

Tucker, began "barking orders" at Plaintiff. (PSAMF 37.) Plaintiff complained about this incident to the performance leader, however, Ms. Tucker was not disciplined. (*Id.* 39.)

In July 2013, Defendant received a letter from a passenger describing Plaintiff as rude, unfriendly, and argumentative. (Decl. of Eon Rambharan ("Rambharan Decl.") Ex. B ("Employee Summary"), at 9–10, ECF No. 17-3.) Defendant informed Plaintiff of this complaint, and Plaintiff recalled the incident and indicated that the passenger was also upset. (*Id.* at 10.) Defendant requested that Plaintiff personally inform her performance leader of any incidents in the future to ensure that customers receive the level of professionalism expected from Defendant. (*Id.*) In November 2013, Defendant received another passenger complaint regarding Plaintiff's conduct. (*Id.* at 9.) Plaintiff did not recall this incident and Defendant acknowledged that the letter was general, but Defendant conveyed to Plaintiff the general perception of the letter regarding her quality of customer service. (*Id.*) In November 2014, a passenger complained because Plaintiff was involved in an argument with a co-worker and that Plaintiff acted very rudely to her co-worker. (*Id.* at 8.) Plaintiff acknowledged that she had an argument in front of customers, apologized for her conduct, and explained that her co-worker was rude to her. (*Id.*)

On January 1, 2015, Defendant received another customer complaint about Plaintiff because Plaintiff was not answering the passenger's questions and began yelling at the customer. (*Id.* at 8.) Defendant attempted to talk to Plaintiff to investigate the situation, however, Plaintiff responded that Defendant "does not care for her well being or her safety." (*Id.*) Plaintiff stated that she did "not have to help passengers if they start to yell at her." (*Id.*) As a result of this incident and the other customer complaints, on January 6, 2015, Plaintiff received a Corrective Action Notice. (Rambharan Decl. Ex. C.) The notice informed Plaintiff that if she did not immediately improve her performance, Plaintiff may receive more serious corrective

action. (*Id.*) Plaintiff refused to sign the acknowledgement of receipt of the letter because she believed that the complaints were inaccurate. (PSAMF 51.)

However, Plaintiff received another customer complaint on February 24, 2015, in which the customer complained that Plaintiff was rude and that the customer felt insulted by Plaintiff's actions. (Employee Summary 7.) Plaintiff stated that she did not recall this incident. (*Id.*) Defendant again advised Plaintiff that passengers cannot perceive her to be rude and unhelpful. (*Id.*)

On March 28, 2015, Plaintiff was involved in two separate incidents. In the first incident, while Plaintiff was assisting a passenger, Ashley Johnson, a co-worker and ready reserve employee,[2] brought another passenger to Plaintiff for assistance. (PSAMF 54, 55.) What caused this incident between Plaintiff and Ms. Johnson is unclear, however, the incident resulted in a shouting match between Plaintiff and Ms. Johnson in front of customers. (Rambharan Decl. Ex. H.) The second incident occurred in the employee break room some time after the first incident. (PSAMF 57.) While in the break room, Plaintiff ranted loudly about ready reserve employees. (*Id.*) There were at least two ready reserve employees in the break room that overheard Plaintiff's statements. (*See id.*) Plaintiff complained that ready reserve employees are ghetto, disrespectful, did not know anything, and that she had the ability to get them fired. (*Id.*) Two ready reserve employees complained to the performance leader, Melita McKay, about Plaintiff's conduct in the break room. (*See* Rambharan Decl. Exs. I, J.) The ready reserve employees noted that Plaintiff was trying to intimidate them with her statements about being able to get them fired and, as a result, they felt that they would be unable to ask the customer service agents for help. (*Id.* Exs. I, J.)

---

[2] Defendant characterizes ready reserve employees as similar to customer service agents but are considered part-time. (Mot. 5.)

## C. Decision to Terminate Plaintiff's Employment

Defendant, through its Department Manager, Eon Rambharan, investigated the incidents involving Plaintiff. (Rambharan Decl. ¶ 4.) On March 31, 2015, Plaintiff was suspended pending the result of the investigation. (PSAMF 59.) On April 1, 2015, Ms. Mckay wrote a letter to Mr. Rambharan recommending that Plaintiff's employment be terminated as a result of her job performance, customer complaints, and incidents with co-workers. (Rambharan Decl. Ex. D.) This recommendation for termination was also approved by Defendant's Human Resources department. (*Id.* ¶ 7, Ex. E.) On April 10, 2015, while suspended, Plaintiff claimed that she suffered an anxiety attack because of the unwarranted suspension, and she obtained a letter from her physician indicating that her condition warranted disability (retroactive to March 31, 2015). (PSAMF 61.)

On April 27, 2015, Defendant ultimately approved of the decision to terminate Plaintiff. (Rambharan Decl. Ex. F.) On April 28, 2015, Plaintiff was provided notice that Defendant had decided to terminate her employment, but that she also had the option to resign. (*Id.* Ex. F.) Plaintiff declined to resign, and as a result, her termination was effective April 30, 2015. (*Id.* ¶ 8.)

## D. Complaint with the Department of Fair Employment and Housing

Following her termination, on September 25, 2015, Plaintiff filed a complaint with the Department of Fair Employment and Housing ("DFEH") alleging that she was terminated because she is African-American and as a result of her disabilities. (Compl. Ex. 1, ECF No. 1-1.) On July 20, 2016, the DFEH investigated and dismissed Plaintiff's claims based on insufficient evidence. (Decl. of Amy W. Findley ("Findley Decl.") Ex. S, ECF No. 17-2.)

## III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable

inferences in the light most favorable to the nonmoving party. *Scott,* 550 U.S. at 378. A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as

claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

California's Fair Employment and Housing Act ("FEHA"), California Government Code section 12940 *et seq.*, makes it unlawful for an employer to discharge a person from employment or discriminate based on that person's race or disability. Cal. Gov't Code § 12940(a).

The California Supreme Court adopted the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), to analyze disparate treatment claims. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000). Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a prima facie case of discrimination. *Id.* If the prima facie case is shown, then a presumption of discrimination arises, and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Id.* at 355. If the defendant states a legitimate, nondiscriminatory reason, then the presumption is negated, and the burden shifts back to the plaintiff to demonstrate that the proffered reason is mere pretext for discrimination. *Id.* at 356.

However, when an employer moves for summary judgment, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (internal quotation marks omitted). To prevail on summary judgment, the employer is required to "show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013) (alterations in original). If the employer meets its burden, then the "employee must demonstrate either that the defendant's

showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." *Id.* (internal quotation marks omitted) (omission in original).

## A. Race Discrimination in Violation of FEHA

Plaintiff's first cause of action is for race discrimination in violation of FEHA. To state a prima facie case of discrimination under FEHA, a plaintiff must show that: (1) she "was a member of a protected class"; (2) she "was qualified for the position [s]he sought or was performing competently in the position she held"; (3) she "suffered an adverse employment action"; and (4) the employer acted with discriminatory motive or "some other circumstance suggests discriminatory motive." *Guz,* 24 Cal. 4th at 355; *see also Lawler*, 704 F.3d at 1242.

Here, Defendant bears the burden to show that Plaintiff could not establish one of the elements of her FEHA race discrimination claim or that there was a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff's employment. Defendant argues that Plaintiff failed to set forth evidence that it acted with a discriminatory motive, and relatedly, that Plaintiff was terminated for a legitimate, nondiscriminatory reason.

Defendant has set forth evidence that Plaintiff was terminated for a legitimate, nondiscriminatory reason. Plaintiff was terminated following an investigation into Plaintiff's March 28, 2015, incidents involving a co-worker and other ready reserve employees as well as prior customer complaints regarding Plaintiff's demeanor and attitude. (Rambharan Decl. Ex. D.) At her deposition, when asked why she believed disciplinary action was taken against her because of her race, she responded, "I don't know how to answer that." (Findley Decl. Ex. A ("Harris Deposition"), at 150.) Plaintiff was also asked, "Do you think you were terminated because of your race?" (*Id.*) Plaintiff responded, "I think I was terminated because of the amount of time I had with the company." (*Id.*) Plaintiff has provided no evidence that race was a factor in her termination.

Instead, Plaintiff argues that there were two incidents where Caucasian employees were treated more favorably than African American employees. (Opp'n 11–12.) The first incident Plaintiff referred to was an incident that occurred in 2009 when Plaintiff complained about a Caucasian employee and the employee was not subjected to any disciplinary action. (Opp'n 11.) Plaintiff does not describe whether this other employee was also a customer service agent, whether this other employee had a history of customer complaints, whether this employee was working under a corrective action notice, or whether this other employee threatened to have other employees fired. The second incident involved "Sergio" in which Sergio confronted Plaintiff about returning late from lunch. (*Id.* at 12.) Plaintiff was not disciplined for returning late, and Sergio did not make any racial comments to Plaintiff. (Reply 3, ECF No. 19.) It is unclear to the Court how these two incidents relate to why Plaintiff was terminated in 2015, or how these incidents suggest that Plaintiff's termination was motivated by race.

As Defendant states a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has failed to demonstrate that the proffered reason was mere pretext for discrimination, summary judgment on this issue is proper.

**B.    Disability Discrimination in Violation of FEHA**

Similar to Plaintiff's first claim, to state a prima facie case for disability discrimination, Plaintiff must show: (1) she "was a member of a protected class"; (2) she "was qualified for the position [s]he sought or was performing competently in the position she held"; (3) she "suffered an adverse employment action"; and (4) the employer acted with discriminatory motive or "some other circumstance suggests discriminatory motive." *Guz*, 24 Cal. 4th at 355.

Defendant argues that Plaintiff cannot establish that she was terminated for a discriminatory reason because Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff. Defendant states that (1) it was not aware of Plaintiff's

disability (and thus could not have discriminated against Plaintiff for her disability); and (2) Plaintiff was terminated for a legitimate, nondiscriminatory reason.

As discussed above, Defendant provided a legitimate, nondiscriminatory reason for Plaintiff's termination. This reason has nothing to do with Plaintiff's disability. Plaintiff argues that there is "evidence to demonstrate that Plaintiff's disability and need for accommodation were treated with disdain by [Defendant]." (Opp'n 16.) Plaintiff relies on Defendant's third-party administrator's denial of her requests for medical leave. However, the first denial was based on Plaintiff's failure to timely request the accommodation. (PSAMF 34, 35.) Plaintiff provides no evidence that the second request was ever submitted. However, even assuming it was, it would have been submitted after she was suspended, but before she was terminated. Employers "proceeding along lines previously contemplated, though not yet determined, is no evidence whatsoever of causality." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Similar to Plaintiff's claim for race discrimination, Plaintiff offers nothing in rebuttal to Defendant's legitimate, nondiscriminatory reason for termination. Accordingly, summary judgment is proper.

**C.      Failure to Prevent Discrimination**

As Plaintiff fails to create a triable issue of material fact as to her race or disability discrimination claim, her claim for failure to prevent discrimination in violation of California Government Code section 12940(k) must also fail. *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998) ("Employers should not be held liable for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented."). Plaintiff has set forth no evidence that she was subjected to race or disability discrimination that required Defendant to remedy the discrimination. In fact, Plaintiff believed she was terminated because of her length of employment with Defendant, not because of any race or disability discrimination. (*See* Harris Deposition 150.) Accordingly, summary judgment on this issue is proper.

### D. Failure to Provide Reasonable Accommodations

The elements of a prima facie claim for failure to make reasonable accommodations are: "(1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is qualified to perform essential functions of the position; and (3) the employee failed to accommodate the plaintiff's disability." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 798 (N.D. Cal. 2015) (citing *Scotch v. Art Inst. of Cal.-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 1010 (2009)). Reasonable accommodation means a "modification or adjudgment to the workplace that enables a disabled employee to perform the essential functions of the job held." *Taylor v. Trees, Inc.*, 58 F. Supp. 3d 1092, 1111 (E.D. Cal. 2014).

To face liability under section 12940(m), an employer must be aware of the employee's disability. *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 443 (2007). An "employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing." *Id.* (internal quotation marks omitted). An employer cannot be "liable for failing to accommodate a disability of which it had no knowledge." *Id.* (internal quotation marks omitted). An employee is responsible for requesting accommodation for his or her disability, unless the employer recognizes that the employee has a need for such accommodation. *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001).

In response, Plaintiff offers a hodgepodge of reasons in support of her claim for failure to provide reasonable accommodations that essentially boils down to (1) two requests for accommodations to wear a splint for her wrist and to work on a modified schedule, and (2) Defendant's denial of her request for leave on March 19, 2015. (Opp'n 15, 20.) However, Plaintiff provides no support that she informed Defendant of her requests for accommodation. Plaintiff's evidence shows that in 2001, her doctor told her that she should have a modified work schedule in May of that year, and that in 2009, her doctor told her that she should wear a splint. (PSAMF 10, 11.) Plaintiff sets forth no evidence that she ever informed Defendant of her disability.

Instead, Plaintiff offers conclusory arguments, without evidence, that Defendant had to be aware. (Opp'n 15.) This is insufficient to defeat a motion for summary judgment. Importantly, before the Court are Plaintiff's doctor's notes indicating that she should wear a splint for her wrist and she should be on a modified work schedule between May 8, 2001, and May 22, 2001. (Harris Decl. Exs. E, F.) There is no evidence that these requests were ever communicated to Defendant. Additionally, Plaintiff admitted in her deposition that whenever she did request accommodations to Defendant's third-party administrator, Sedgwick, the requests were approved. (Harris Deposition 234.)

Moreover, Defendant's denial of Plaintiff's request for leave on March 19, 2015, did not have anything to do with Plaintiff's disability. There is no dispute that Plaintiff took a part of the day off, allegedly because of her disability, but Plaintiff did not inform Sedgwick until over two days later. (PSAMF 34, 35.) When Plaintiff eventually informed Sedgwick, Sedgwick denied Plaintiff's request because it was untimely. (*Id.* 35.)

Accordingly, summary judgment on this issue is proper.

### E. Retaliation

Plaintiff's fifth and sixth claims are for retaliation in violation of California Government Code sections 12945.2 and 12940(h). Plaintiff's claim for retaliation under section 12945.2 is based on Defendant's retaliation for her medical leave pursuant to the California Family Rights Act ("CFRA"); whereas Plaintiff's claim under 12940(h) is a claim of retaliation based on Plaintiff's request for accommodations. (Opp'n 21–25.)

To establish a prima facie case of retaliation, a plaintiff must show: (1) "she engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a casual link between the protected activity and the employer's action." *Akers v. Cty. of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002).

Defendant argues that Plaintiff's claims for retaliation fail because she did not engage in protected activity and that there is no causal link between any alleged protected activity and the decision to terminate Plaintiff. (Mot. 18–19.) In response, Plaintiff argues that the causal link is satisfied based simply on the timeline and the "close temporal association between the protected activity . . . and the adverse employment actions." (Opp'n 24.)

Defendant relies solely on *Taylor v. City of Los Angeles Dep't of Water & Power*, 144 Cal. App. 4th 1216, 1235 (2006) for the proposition that a "[c]lose proximity in time of an adverse action to an employee's resistance or opposition to unlawful conduct" is sufficient to establish a causal link. (Opp'n 24–25.) However, close proximity in time *alone* is insufficient to establish a causal link. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 358 (2013) (stating that an employee who knows she is about to be fired may be tempted to forestall lawful action by making an unfounded charge of discrimination). Here, as explained above, Plaintiff took her purported medical leave and did not make a request within two days of her leave. Plaintiff's request for medical leave on March 19, 2015 was denied by a third-party because it was untimely. This is undisputed. Further, although Plaintiff was terminated a little less than two months later, Plaintiff does not set forth how the denial of leave by a third party and her termination are in any way related. This is not sufficient to overcome a motion for summary judgment. As set forth above, Defendant provided a legitimate, nondiscriminatory reason for Plaintiff's termination: her job performance, past customer complaints, and incidents with co-workers. Plaintiff has provided no evidence that she was retaliated against as a result of her requests for medical leave or her purported requests for accommodation. Accordingly, summary judgment is proper.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 17.) The Court will issue judgment, and the Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

April 5, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**